

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bert Ford, Administrator
Texas Liquor Control Board
Austin, Texas

Dear Sir:

Opinion No. O-5116
Re: Constitutionality of Section
3, Article 667-5, Vernon's
Annotated Penal Code.

Your letter of recent date requesting the opinion of this department on the above stated matter reads in part as follows:

"It has recently been called to our attention that retail beer licenses were held by a number of retail grocery stores operated as Safeway Stores, Inc., of Texas, and that the corporation under which these stores have been so operated is now dissolved. These stores are now owned by a foreign corporation known as Safeway Stores, Incorporated of Maryland.

"Attorneys representing these stores have been notified that the licenses heretofore granted the Texas corporation may not be used for the sale of beer for the benefit of the Maryland corporation, and such sales of beer were discontinued.

"The attorneys were also advised that under previous rulings of your Department that the new owners would be unable to qualify under the Texas Liquor Control Act to hold retail beer licenses.

"These attorneys are of the opinion that there is merit to the argument that Texas laws are unconstitutional in excluding foreign corporations doing business in Texas under proper permits from holding

Honorable Bert Ford, Administrator, Page 2

licenses to sell beer. A brief on that subject
has been furnished this office, together with a
letter requesting that the matter be submitted
to you for a ruling. For that purpose the let-
ter and brief accompany this letter with request
that the matter be considered and ruled upon in
the light of the arguments advanced.

". . . ."

The letter of Mr. W. D. White of the law firm of
Clark, White & Rogers of Dallas, Texas, accompanying your
inquiry is in part as follows:

"On the first of the year Safeway Stores,
Incorporated, of Texas was dissolved and the
operations of their chain grocery from that time
have been conducted in Texas by the parent con-
cern, Safeway Stores, Incorporated, of Maryland.
Shortly after the first of the year, Safeway
Stores, Incorporated, of Maryland applied for a
retail beer dealer's license.

"We were advised that your department would
necessarily have to refuse these permits because
the applicant was a corporation organized outside
of the State of Texas. We discussed the matter
with Mr. Paxton and he agreed to withhold a re-
fusal of the permits until further advice from
us.

"At this time we would like to ask that you
request an opinion from the Attorney General on
the constitutionality of that portion of the Li-
quor Control Act requiring the applicant, if a
corporation, to be organized and chartered under
the laws of Texas. We do not believe that Mr.
Leon Moses' opinion covers the constitutionality
of this act.

". . . ."

Article 667-5, Vernon's Annotated Penal Code pro-
vides in part as follows:

"Any person desiring a license as manufac-
turer, distributor, or retail dealer may in

Honorable Bert Ford, Administrator, Page 3

vacation or in termtime file a petition with the County Judge of the County in which the applicant desires to engage in such business which petition shall state as follows:

". . . .

"(3) If a corporation, that applicant is organized and chartered under, and has complied with, all corporation laws of this State applicable to such corporation, that the principal place of business is in the county where such license is sought, and the president or manager shall make an affidavit that he possesses all of the qualifications provided in paragraph (1) above.

". . . .

"If a retail dealer:

"(1) The same information required of a manufacturer.

". . . .

"(8) If applicant for Retailer's License is a corporation, application shall show that the president or manager thereof has been a resident of the county wherein the license is sought for more than one year next preceding the date of the application and that no officer of the corporation is disqualified in any other manner that would prevent him from holding such license in his own name."

It is contended by attorneys for the foreign corporation that subsection (3) of Article 667-5, Vernon's Annotated Penal Code, is unconstitutional because it denies to the foreign corporation the equal protection of the law under the Fourteenth Amendment to the Constitution of the United States.

The attorneys for the foreign corporation have submitted an excellent brief supporting their contention.

"The Texas Liquor Control Act is intended as an exercise of the police powers of the State

Honorable Bert Ford, Administrator, Page 4

to protect the health, welfare, peace and temper-
ance of its people; and all of its provisions are
to be construed liberally to effectuate such pur-
poses." (Texas Liquor Control Board v. Marine
Exchange Social Club, 127 S. W. (2) 967).

It is stated in Texas Jurisprudence, Vol. 9, p. 503:

"The police power is broad and comprehensive;
and regulations which appear to be reasonable and
to promote the general convenience and the public
welfare are not subject to attack on constitutional
grounds. No doubt, an exercise of the police power
is ordinarily an abridgment of private rights; yet
the rights of the individual must yield to the pub-
lic safety, health and comfort. The possession and
enjoyment of all rights are subject to such reason-
able conditions as may be deemed by the governing
authority of the country essential to the safety,
health, peace, good order and morals of the communi-
ty. Again, property rights are subject to the exer-
cise of the power in question; and regulations which
are within the police power must be submitted to
although they may be productive of property loss."

The police power of the State, acting through its
Legislature, is very broad, and the exercise of such power
will not be questioned or reviewed by the judiciary, except
where the exercise of the power is clearly unreasonable and
arbitrary. (First Texas Prudential Insurance Company v.
Smallwood, 242 S. W. 498.)

It is well recognized that the propriety of an
exercise of the police power is subject to judicial review;
and the law will be declared to be invalid if it is shown
to contravene the rights of the individual. (Missouri,
K. & T. Ry. Co. v. Improvement District, 297 S. W. 206).

It is stated in Texas Jurisprudence, Vol. 9, p. 515:

"The police power comprehends laws regulat-
ing places of public resort, common carriers,
sales of food products, the manufacture and sale
of intoxicants, operation of gins, the proficiency
of persons who engage in certain occupations."

Honorable Bert Ford, Administrator, Page 5


It is stated in Corpus Juris Secundum, Vol. 16, p. 1027:

"A state has the right to classify persons engaged in the sale of intoxicating liquors. There is no common right to engage in the sale of such liquors, but only a privilege which, without denial of equal protection of the laws, may be granted to some and withheld from others, or, having been granted, may be revoked. Also, since the adoption of the Twenty-First Amendment to the federal constitution, the equal protection clause does not apply to intoxicating liquor imported into a state. In view of these considerations and the reasonableness of many classifications, regulations pertaining to intoxicating liquors and the sale thereof have, in the majority of cases, been held not invalid as denying the equal protection of the laws; but a few regulations have been held invalid on this ground."

We have been unable to find any cases where a state has attempted by legislation to forbid a foreign corporation from selling articles of commerce which the state permits domestic corporations to sell. Ordinarily, the question usually comes up where a state has by legislative enactment attempted to discriminate in favor of a domestic corporation in tax matters. However, there are other instances where the state by legislation has attempted to require a foreign corporation to do certain things not required of domestic corporations, however, for the purpose of this opinion we do not deem it necessary to discuss such cases.

Section 504, Vol. 16, Corpus Juris Secundum deals generally with the question of whether or not a state has a right to discriminate in legislation between foreign and domestic corporations where the foreign corporation has a permit to do business in the state. It is a general rule that the state does not have such right and it is generally held that it is a denial of equal protection of laws to discriminate in legislation between different corporations simply because one is a domestic corporation and the other a foreign corporation. It will be noted, however, that the above described rule of law has been somewhat restricted in its application to the sale of intoxicating liquors.

A federal district court in the case of General Sales and Liquor Company v. Becker et al., 14 Fed. Sup. 348,

559

Honorable Bert Ford, Administrator, Page 6

construing a provision of the Missouri Liquor Control Act
which provided in effect that it was unlawful for any person,
firm, partnership or corporation residing without the state
to solicit, receive or take orders for the sale of intoxicat-
ing liquors within the state except by or through a duly li-
censed wholesale liquor dealer who was considered for the
purpose of the Act as an agent of said nonresident person,
firm, partnership or corporation or to haul or transport in-
toxicating liquor, or cause to be handled or transported in-
toxicating liquor, in any manner whatsoever in or into the
state, for sale, etc. This statute further provided that it
was unlawful for any person in the state holding a license
or permit to sell beer or malt liquors or holding any retail
liquor dealer's license or permit, to purchase any such beer,
malt liquor, or intoxicating liquor, from any person other
than the brewer, manufacturer, or distiller thereof, or regu-
larly licensed wholesaler or distributor of beer, malt liquor,
or other intoxicating liquor in the case of malt liquor, and
other intoxicating liquor, brewed, manufactured or distilled
in the state; or, to purchase from any brewer, manufacturer,
or distiller, any intoxicating liquor, manufactured outside
of the state, except through a wholesaler or distributor in
the state holding, and operating under, a license or permit
issued by the supervisor of liquor control. The statute at-
tacked in this case placed restrictions upon the disposition
of intoxicating liquors shipped by nonresidents into Missouri.
They could only be sold in a certain manner and to certain
dealers. They could not be sold and delivered directly to
retail liquor dealers.

We quote from this case as follows:

"The equal protection clause does not prevent
the state from making classifications of persons
in the enactment of laws under the police power,
but permits wide discretion in that regard, and
avoids what is done only when it is without any
reasonable basis, and purely arbitrary. Even in
the absence of proof, if any state of facts can
reasonably be conceived that would sustain the
classification, the existence of that state of
facts will be assumed. The burden is on the party
who assails the classification to show that it is
arbitrary."

This case further holds that the statutes under
attack were not unconstitutional and void by reason of

Honorable Bert Ford, Administrator, Page 7

infringing either the commerce clause, or the equal protection clause, of the Constitution.

In Rippey v. Texas, 193 U. S. 504, 24 S. Ct. 516, the court said that a state may prohibit the sale of intoxicating liquor absolutely, or it may prohibit it conditionally.

It is further stated in the above mentioned case of General Sales and Liquor Co. v. Becker et al.:

"The sole contention here made by plaintiff is that being a wholesale dealer, but a nonresident of Missouri, it is forbidden by the Liquor Control Act of Missouri to sell liquor to retail liquor dealers; while resident wholesale dealers may do so. There cannot, I think, be urged as existing any discrimination in the statutes attacked, as between liquors of foreign manufacture and those of domestic manufacture; for the agreed facts disclose that both beer and distilled spirits of foreign manufacture can be sold, and are being sold, in Missouri by licensed resident wholesalers, without let or hindrance. So, I think the sole question in the case is, in the final analysis, whether the state of Missouri has the right under the police power to require by statute that a wholesale dealer in intoxicating liquor must be a resident of Missouri. This is conceded by plaintiff in its brief to be the sole question up for judgment, for it admits that 'the sole basis of the discrimination is resident or nonresidence'. . . .

"Plaintiff bottoms its contention of discrimination on the alleged violation by the accused statute of the commerce clause of the Federal Constitution and of that provision of the Fourteenth Amendment which forbids any state to pass a statute which deprives any person of the equal protection of the law. . . ."

It is stated in the case of Dugan v. Bridges, 16 Fed. Sup. 694:

"If a statute purporting to have been enacted to protect the public health, the public morals, or

Honorable Bert Ford, Administrator, Page 8

the public safety, has no real or substantial relation to those objects or is a palpable invasion of the rights secured by the fundamental law, it cannot stand the test of constitutionality.

"We do not hold that a state might not pass laws which would come within the condemnation of the courts, such for instance as those which have no relation to the public welfare, health, or morals. A pure taxing act on interstate shipments to promote intrastate industries would have no legitimate connection with the police power of the state. But so long as reasonable, having relation to the proper exercise of the police powers of a state, even though the state may obtain incidentally some revenue therefrom, they fall outside the purview of the Commerce Clause. This we conceive to be the true line of demarkation between the powers reserved to the state to regulate the traffic in intoxicants, recognized by Congress in the passage of the Webb-Kenyon Act, and subsequently written into the Twenty-First Amendment."

What was said in the above mentioned case with reference to the Commerce Clause, in our opinion, can be said with reference to the Fourteenth Amendment to the Constitution of the United States.

In the case of Johnson v. Elliott, 168 S. W. 968, it is stated:

"But to justify the courts in holding that a given act is an unwarranted invasion of the fundamental rights of the citizen, and therefore beyond the police power of the state, that objection must appear from the face of the act itself or from facts of which the courts must take judicial cognizance."

The Supreme Court of the State of Texas in the case of De Grazier v. Stephens, 105 S. W. 992, held in effect that the regulation of the liquor traffic is within the police power of the state. That Article 4, Section 2, of the United States Constitution providing that citizens of each state shall be entitled to all of the privileges and immunities of

Honorable Bert Ford, Administrator, Page 9

citizens of the several states, and Article 14, Section 1, of the Federal Constitution providing that no state shall deny any person within its jurisdiction the equal protection of the laws, were not designed to interfere with the state's exercise of its police power. Those provisions of the Constitution are violated by any act, save in the exercise of the state's police power, that imposes a burden upon a non-resident of the state, which is not imposed upon the residents of the state, and the state cannot, under the guise of its police power, make an unreasonable discrimination. The requirement of the Liquor Control Act in existence at that time (April 10, 1907) regulating the sale of intoxicating liquors, providing that an applicant for a retail liquor license must be a citizen of the state and a resident of the county when the license is sought, is not a mere guise to evade the provisions of the Constitution (Article 4, Section 2, and Article 14, Section 1) prohibiting discrimination by a state against nonresidents, but it is calculated to aid in regulating the liquor traffic, by rendering the licensee subject to process where suit is brought on his bond, and by facilitating the determination of his other qualifications to exercise the license.

It is stated in Texas Jurisprudence, Vol. 9, p. 466:

"One of the most delicate duties to be performed by the judicial branch of the government is that of declaring an act of the legislative department to be unconstitutional and invalid. The power of the courts in this respect is one that will be exercised with great caution, especially where the matters in controversy pertain to governmental policies, the public health and public utilities. . . ."

This department held in an opinion written by Honorable Leon Moses, Assistant Attorney General, addressed to Honorable C. R. Miller, Administrator, Texas Liquor Control Board, August 26, 1936, Volume 373, page 338, Letter Opinions, that a foreign corporation would not be authorized to obtain a permit to distribute beer within the State of Texas. We have carefully considered the above mentioned brief submitted by the attorneys for the foreign corporation and do not believe the authorities cited therein are applicable to the question under consideration.

563

In view of the foregoing authorities it is our opinion that the State in the proper exercise of its police power can legally refuse a foreign corporation license to sell beer and/or wine in this State. Therefore, it is our further opinion that the above mentioned provision of Article 667-5, Vernon's Annotated Penal Code is constitutional.

APPROVED MAR 15, 1943

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Ardell Williams
Assistant

AW:mp

